UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

```
                                    )
GREAT AMERICAN ALLIANCE             )
INSURANCE COMPANY, a foreign        )
Corporation,                        )
                                    )
                  Plaintiff,        )
                                    )
       v.                           )   CIVIL ACTION NO.
                                    )   5:24-cv-00055-WGY-PRL
                                    )
AUTO-OWNERS INSURANCE COMPANY, a    )
foreign corporation,                )
                                    )
                  Defendant.        )
                                    )
```

YOUNG, D.J.[1]                                    April 21, 2026

## MEMORANDUM AND ORDER

Before the Court in this equitable subrogation action are the cross-motions for summary judgment of Great American Alliance Insurance Company ("Great American") and Auto-Owners Insurance Company ("Auto-Owners"). For the reasons stated below, the cross-motions for summary judgment, ECF Nos. 35 and 38, are each hereby DENIED.

---

[1] Of the District of Massachusetts, sitting by designation.

## I. BACKGROUND

### A.    Undisputed Facts

On or around May 17, 2017, four individuals were exposed to legionella bacteria in a hot tub at Summit Greens, a property located in Lake County, Florida.  Compl. ¶¶ 18-20; Fischer Complaint, ECF No. 35-1 ¶¶ 16, 22; Lewis Complaint, ECF No. 35-2 ¶¶ 13, 28.  Karin Fischer became ill, Delmar Fischer died, and Charlie Lewis and Dessie Larita Brown-Lewis became ill or suffered other damage.  Id.

Auto-Owners for purposes of this action is the primary carrier of Summit Greens Residents' Association, Inc. ("Summit Greens") and Leland Management, Inc. ("Leland Management"), both of which maintained a $1,000,0000 Commercial General Liability insurance policy with Auto-Owners.  Auto-Owners SOF ¶ 1; Great American SOF ¶ 7; Auto-Owners Policy, ECF No. 10-1 at 7.[2]  Great American for purposes of this action is the excess carrier that insured both Summit Greens and Leland, with a $10,000,000 umbrella policy.  Great American SOF ¶ 8; Great American Policy, ECF No. 10-2 at 2.

---

[2] References to Auto-Owners Statement of Undisputed Facts ("Auto-Owners' SOF") and Great American's Statement of Fact ("Auto-Owners SOF") are contained in their respective motions for summary judgment, ECF Nos. 35 and 38, respectively.  Some portions of the statements of fact are recited verbatim without quotations for readability.

On July 23, 2018, Karin Fischer, individually, and as the personal representative of the estate of Delmer Fischer, filed a wrongful death and personal injury lawsuit against Summit Greens and Leland Management, as well as the pool servicing company ("the Fischer Action") in Florida state court.  Auto-Owners SOF ¶ 4; Great American SOF ¶ 1.

Charlie Lewis made a claim to Auto-Owners on June 11, 2019, to which Auto-Owners assigned claim number 300-0192569-2019 ("the Lewis Claim").  See Kennison Aff., ECF No. 50-1 at ¶¶ 17-18.

On June 17, 2019, Auto-Owners responded to a letter of representation from counsel for Charlie Lewis acknowledging Mr. Lewis' claim ("Lewis Claim") and attaching, in part: a June 10, 2019 Disclosure of Insurance Information that (1) identifies Auto-Owners' policy number 72089334 issued to Summit Greens, (2) assigns claim number of 300-0192569-2019 to the Lewis Claim, and (3) identifies Great American's excess policy number UM4959365 issued to Summit Greens.  Great American SOF ¶ 9.

Auto-Owners made multiple inquiries to Charlie Lewis's counsel, who did not respond.  See Great American SOF ¶¶ 10-15; Kennison Aff. ¶ 25; Ex. 5-1 – 5-3, ECF No. 50-1 at 22-36.

On October 12, 2020, Great American's counsel wrote to Auto-Owners, putting them on notice of possible multiple claims

[3]

arising out of a single occurrence, seeking the identity of "two other individuals" in the hot tub (i.e., the Lewises):

> Third, Great American also seeks to confirm from Auto-Owners whether all claimants/potential claimants will be attending the mediation. As you, Florida law mandates that an insurer has the right to exhaust the limits on less than the presented claims; however, it cannot do so on a first-come-first-serve basis, or without conducting a full and complete professional evaluation of all such claims. *See Farinas v. Florida Farm Bureau*, 850 So. 2d 555 (Fla. 4th DCA 2003). An insurer who maximizes the protection available to a policyholder after conducting a thorough and complete investigation, therefore, can settle some, but not all of the claims within the available policy limits without subjecting themselves to a bad faith claim. *See General Security National Ins. Co. v. Marsh*, 303 F.Supp.2d 1321 (M.D. Fla. 2004); *see also Liberty Mutual Ins. Co. v. Davis*, 412 F.2d 475 (5th Cir. (Fla.) 1969) ("The insurer's investigation of the facts relating to liability and to damages, the extent and seriousness of the negotiations, and the insurer's rejection of settlement are all relevant to the issue of good faith before as well as after suit is filed." *Id.* at 483-84.). **Because Great American understands that at least two other individuals were present in the subject hot tub – upon which the Fischers' claims are premised – with Karin Fischer and Delmer Fischer, can you confirm whether these individuals are expected to be present at the mediation? If so, please provide their names and contact information to the undersigned, or to Ms. Hugues. If not, please confirm what efforts have been made to ensure their attendance, or representation, at the mediation?**

Letter, ECF No. 46-3 at 7. It is unclear from the record when Great American's counsel first became aware of potential claims by the Lewises by name; indeed, Great American submits an affidavit, see infra, that it was not aware of the Lewis Claim until August 2021.

On October 20, 2020, Great American's counsel sent an email to Auto-Owner's counsel reiterating the same concerns:

Hi Robin...

I just learned that you have been brought on board by Auto Owners regarding the above matter. I represent Great American, the excess carrier over the Auto Owners policy. As you know, this matter is scheduled for mediation next week. On behalf of Great American, I sent the attached correspondence to Matt Kennison last week. As noted in the letter, Great American has the following three inquiries for Auto Owners – to which Great American has yet to receive a response:

**First**, has Auto-Owners – whether through Summit Greens or directly from Auto-Owners – tendered the defense and indemnification of the Underlying Action to Leland, or Leland's insurance carrier?

**Second**, and in keeping with Auto-Owners's fiduciary duties owed to Great American, please forward the reports from defense counsel defending Leland before the mediation – as Great American has not received any reports regarding Leland. Please ensure that defense counsel's pre-mediation report is included.

**Third**, Great American understands that at least two other individuals were present in the subject hot tub – upon which the Fischers' claims are premised – with Karin Fischer and Delmer Fischer, can you confirm whether these individuals are expected to be present at the mediation? If so, please provide their names and contact information to the undersigned, or to Ms. Hugues. If not, please confirm what efforts have been made to ensure their attendance, or representation, at the mediation?

There are other areas of discussion as well. Are you available this Friday for a call? – I am free all day. In the interim, and to the extent you have responses; please forward to my attention.

Thanks.

--Ed

Email, ECF No. 46-3 at 2.

The Fischers, Auto-Owners, and Great American settled the Fischer Action on May 11, 2021. Great American SOF ¶¶ 2, 16; Auto-Owners SOF ¶ 11. Great American paid amounts in excess of the Auto-Owners' $1,000,000 policy limit. Auto-Owners SOF ¶¶ 10-11.

Two days later, on May 13, 2021, the Lewises filed a lawsuit against Summit Greens, Leland Management, and the pool servicing company for personal injury and loss of consortium

("The Lewis Action") in Florida state court. See Auto-Owners SOF ¶ 5; Great American's SOF ¶ 4.

On August 13, 2021, Auto-Owners was aware of the Lewis Action. See Great American SOF ¶ 19.

On August 19, 2021, Auto-Owners separately provided notice of the Lewis Action to Great American. Id. at 2. Great American has submitted an affidavit that states this is the first time it was aware of the Lewis Claim and the Lewis Action. Daniel Aff. ¶ 6, ECF No. 44-2 ("Prior to August 19, 2021, Great American was unaware of the Lewis Complaint, the Lewis Claim, and the Lewis Claim Emails."). This may be true as to the filing of the lawsuit and the identity of the Lewises, but it is clear that Great American's counsel was aware approximately nine months earlier that there were other potential claimants. See October 12, 2020 letter, ECF No. 46-3, supra.

Almost a year later, on August 25, 2022, the Lewis Action was dismissed as to Auto-Owners' and Great American's insureds after settlement. Auto-Owners SOF ¶ 12; Great American SOF ¶ 5; Notice of Voluntary Dismissal with Prejudice, ECF No. 44-9. Great American contributed to that settlement in an amount that exceeded Auto-Owners' exhausted primary policy. Daniel Aff. ¶ 8.

[6]

### B.    Procedural History

Great American brings one count against Auto Owners for equitable subrogation.[3]  Compl. ¶ 42, ECF no. 1.   .The cross-motions for summary judgment are fully briefed.  See Def. Auto-Owners Ins. Co.'s Mot. Summ. J. ("Auto-Owners' Mot. Summ. J."), ECF No. 35; Pl.'s Resp. Opp'n Def.'s Mot. Summ J. ("Great American's Opp'n"), ECF No. 44; Def. Auto-Owners Ins. Co.'s Reply Supp. Mot. Summ. J. ("Auto-Owners' Reply"), ECF No. 50; Pl.'s Mot. Summ. J. ("Great American's Mot. Summ. J."), ECF No. 38; Def. Auto Owners Ins. Co.'s Resp. Pl. Great American Alliance Ins. Co.'s Mot. Summ. J. ("Auto-Owners' Opp'n"), ECF No. 46; Pl.'s Reply Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. ("Great American's Reply"), ECF No. 51.  This Court held a hearing on the cross-motions for summary judgment on March 27, 2025, and took the matter under advisement.  See Minute Entry, ECF No. 55.

## II.  ANALYSIS

### A.  Legal Standard

In reviewing a motion for summary judgment, the Court "view[s] all the evidence and draws all reasonable inferences in favor of the non-moving party" and "[a] grant of summary

---

[3] Under Florida law, insurers may bring a claim of equitable subrogation.  See Cincinnati Ins. Co. v. Superior Guar. Ins. Co., 441 F. Supp. 3d 1271, 1275-76 (M.D. Fla. 2020) (Corrigan, J.)

[7]

judgment is proper where there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" FCOA LLC v. Foremost Title & Escrow Servs. LLC, 57 F. 4th 939, 946 (11th Cir. 2023), cert. denied, 144 S. Ct. 103 (2023) (citing Fed. R. Civ. P. 56(a)).

Great American has the burden of proof on its claims, and "[w]hen the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it 'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Ctys. in State of Ala., 941 F. 2d 1428, 1438 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett 477 U.S. 323, 331 (1986) (Brennan, J., dissenting)) (emphasis omitted). That is, "the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." Id. In other words, wherever the jury could rationally disbelieve Great American's proffered evidence, summary judgment will not lie. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-148 (2000).

As here, where there are cross-motions for summary judgment, the Eleventh Circuit instructs that "courts should be very careful in their analysis to ensure that the proper party

[8]

receives the benefit of the summary judgment standard." FCOA LLC, 57 F. 4th at 959.  Simply put, "[w]hen parties jointly move for summary judgment, the court has three options: granting summary judgment for the plaintiff under the defendant's best case, granting summary judgment for the defendant under the plaintiff's best case, or denying both motions for summary judgment and proceeding to trial." Id.

**B.    The Cross-Motions For Summary Judgment Are Denied**

**1. Auto-Owners' Motion for Summary Judgment**

Auto-Owners argues first that, as matter of law, there is no evidence that it "missed or refused any opportunity to settle claims within the Auto-Owners Policy limits." Auto-Owners Mot. Summ. J. at 16.  It argues that multiple claimant cases, such as Farinas v. Florida Farm Bureau Gen. Ins. Co., 850 So. 2d 555, 560-561 (Fla. 4th DCA 2003), do not apply where there is adequate excess coverage. Id. 18-19.  Auto-Owners further claims that on the undisputed facts, it had no duty to notify Great American of the other claimants. Id. at 19.  Because the motion fails on the first argument, there is no need to address the second argument.

Great American argues that its claim is different, a so-called multiple claim, single occurrence scenario ("MC-SO Scenario").  Great American argues, under Florida law, as consistently interpreted in the Middle District of Florida, that

[9]

when faced with a MC-SO Scenario, a primary insurer owes a duty to their insured (and is equitably subrogated to its excess insurer) to act reasonably when settling claims with specific requirements:

> Florida law provides that where multiple claims arise out of one accident the liability insurer may exercise its discretion in how it elects to settle claims, "and may even choose to settle certain claims to the exclusion of others, provided [that] this decision is reasonable and in keeping with its good faith duty."[] In order to satisfy these requirements the insurer must: (1) fully investigate all claims arising from a multiple claim accident; (2) seek to settle as many claims as possible within the policy limit; (3) minimize the magnitude of possible excess judgments against the insured by reasoned claim settlement; and (4) keep the insured informed of the claim resolution process.[]

General Sec. Nat'l Ins. Co. v. Marsh, 303 F. Supp. 2d 1321, 1325 (M.D. Fla. 2004) (Hodges, J.) (citing Farinas, 850 So. 2d at 560-561; Harmon v. State Farm Mut. Automobile Ins. Co., 232 So. 2d 206, 207-208 (Fla. 2d DCA 1970)). See also Pratt v. Government Employees Ins. Co., No. 8:18-CV-1607-CEH-AEP, 2023 WL 2743264, at *7 (M.D. Fla. Mar. 31, 2023) (Honeywell, J.), reconsideration denied, No. 8:18-CV-1607-CEH-AEP, 2023 WL 6809764 (M.D. Fla. Oct. 16, 2023); Eads v. Allstate Indem. Co., No. 14-CIV-61791, 2016 WL 3944072, at *6 (S.D. Fla. Jan. 26, 2016) (Bloom, J.). The above cases are not excess insurer cases; however, "[i]n essence, the excess insurer steps into the shoes of the insured with respect to a claim for bad faith

[10]

against the primary insurance company." <u>Vigilant Ins. Co.</u> v. <u>Continental. Cas. Co.</u>, 33 So. 3d 734, 737-38 (Fla. 4th DCA 2010). Indeed, "Florida case law makes it abundantly clear that an excess insurer's bad faith claim against a primary insurer is derivative of the insured's bad faith claim against the primary insurer." <u>Auto-Owners Ins. Co.</u> v. <u>American Yachts, Ltd.</u>, 492 F. Supp. 2d 1379, 1385 (S.D. Fla. 2007), aff'd sub nom. <u>Auto-Owners Ins.</u> v. <u>American Yachts Ltd.</u>, 271 Fed. Appx. 888 (11th Cir. 2008).

Auto-Owners' claims that equitable subrogation under <u>Farinas</u> is inapplicable where there is an excess policy in play, extinguishing its leverage in obtaining discounted judgments, and that Great American cannot now complain where it participated in the settlement. Auto-Owners' Mot. Summ. J. at 19. Auto-Owners mischaracterizes the claim.

Indeed, although not cited by either party, equitable subrogation under <u>Farinas</u> in an MC-SO scenario was in play in <u>National Tr. Ins. Co.</u> v. <u>Columbia Nat'l Ins. Co.</u>, No. 3:18-CV-1440-J-34JBT, 2020 WL 4284814 (M.D. Fla. May 21, 2020) (Toomey, U.S.M.J.), report and recommendation adopted, No. 3:18-CV-1440-J-34JBT, 2020 WL 4915675 (M.D. Fla. Aug. 21, 2020) (Howard, J.). There, the court determined that a primary insurer's exhaustion of policy limits as to two of three claimants presented a jury question as to a bad faith equitable subrogation claim. <u>Id.</u> at

[11]

*4-6.  So it is here.  Indeed, Auto-Owners as the primary carrier had a duty to attempt to settle for a lower amount. There are questions of facts as to whether it did so here with respect to the Lewis Claim.  Accordingly, Auto-Owners' motion for summary judgment is DENIED.

### 2. General American's Motion for Summary Judgment

Turning to General American's cross-motion for summary judgment, it overreaches, arguing that the bad faith factors were met as matter of law.  Great American's Mot. Summ. J. 13-15; Great American's Reply 5-6.  Specifically, Great American argues that it is entitled to judgment as matter of law because Auto-Owners failed fully to investigate the Lewis Claim, claiming Auto-Owners decided to wait out the statute of limitations instead of investigating, that Auto-Owners did not seek to settle both claims, failed to minimize the effect of possible excess judgments, and failed to keep Great American informed of the claim process by hiding the other claim.  Id.

Great American is, however, viewing the facts and taking all inferences in **its** favor, and cannot meet its burden of proof to obtain an affirmative summary judgment.  As an initial matter, whether an insurer acted in bad faith is a "totality of the circumstances" analysis, and "in the end, 'it is for the jury to decide whether the insurer failed to act in good faith with due regard for the interests of the insured.'"  Primeaux v.

[12]

Progressive Am. Ins. Co., 620 F. Supp. 3d 1173, 1179 (M.D. Fla. 2022) (Badalamenti, J.) (quoting Harvey v. GEICO Gen. Ins. Co., 259 So. 3d 1, 7 (Fla. 2018)) (citation omitted); see also Eads v. Allstate Indem. Co., No. 14-CIV-61791, 2016 WL 3944072, at *5 (S.D. Fla. Jan. 26, 2016) (quoting Jaimes v. GEICO Gen. Ins. Co., 534 Fed. Appx. 860, 865-66 (11th Cir. 2013)).

As for whether Auto-Owners fully investigated the claim, a reasonable jury **could** conclude that, in view of Auto-Owners' inquiries to Charlie Lewis's counsel that went unanswered, the potential resolution of the Fischer claims, and the statute of limitations time ticking away, its actions were entirely reasonable.

Similarly, a reasonable jury **could** conclude that seeking to settle both the Fischer Action and the Lewis Claim within the $1,000,000 policy while the statute of limitations was ticking away could have produced a larger joint claim and potential judgment against Auto-Owners and Great American.

Finally, there are questions of fact as to the effect, if any, of the alleged failure to keep Great American fully informed.  Indeed, Great American indicated in correspondence that it was, in fact, aware at least as of October 12, 2020 of the potential of the Lewises' claim, even if not it was not aware of their identity.  Given that Great American participated in mediating the Fischer claim while aware of the potential

[13]

Lewis Claim, the Lewises' absence at the Fischer mediation, and Auto-Owners' apparent strategy of letting sleeping dogs lie, a jury question is presented as to whether Great American was sufficiently informed, and whether its continued participation in the Fischer mediation without the Lewis parties somehow was the result of bad faith by Auto-Owners. A reasonable jury **could** conclude that Great American was not prejudiced. A reasonable jury **could** conclude that Great American was all-in on Auto-Owners' strategy.

Accordingly, summary judgment is also DENIED as to Great American on its affirmative claims for summary judgment.

## III. CONCLUSION

"Although determining whether an insurer acted in bad faith is generally a question for the jury, courts applying Florida law have granted summary judgment if the undisputed facts **would not allow any reasonable jury to conclude the defendant breached its duty of good faith**." Martin v. Allstate Prop. and Cas. Ins. Co., 794 Fed. Appx. 883, 887 (11th Cir. 2019) (emphasis added). In sum, on this record, a reasonable jury could go either way on these issues of fact surrounding the elements of bad faith. Indeed, "this is not a question the Court can answer at this stage when the evidence must be viewed in a light most favorable to" each of the non-moving parties on their respective motions. Primeaux, 620 F. Supp. 3d at 1180. Further, Great American has

[14]

the burden of proof at trial, and at summary judgment, wherever the jury could rationally disbelieve Great American's proffered evidence, summary judgment will not lie. Reeves, v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-148 (2000).

The cross-motions for summary judgment, ECF Nos. 35 and 38, are each hereby DENIED. As this Court indicated at the summary judgment hearing, it was inclined to deny the cross-motions for summary judgment. See Minute Entry, ECF No. 55. It has now done so. This case is now set for a final pretrial conference on June 22, 2026, and a jury rial for July 6, 2026, before Judge Marcia Morales Howard.

**SO ORDERED.**

William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[4]

---

[4] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.

[15]