**UNITED STATES DISTRICT COURT5:25**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**GREAT AMERICAN ALLIANCE INSURANCE COMPANY,;**

**Plaintiff,**

**v.** **Case No.: 5:24-cv-00055-MMH-PRL**

**AUTO-OWNERS INSURANCE COMPANY,**

**Defendant,**
___________________________________/

**ORDER**

This matter is before the Court on Plaintiff Great American Alliance Insurance Company's ("Great American") renewed motion to seal. (Doc. 96). Defendant has taken no position on the motion. (*See* Doc. 101).

Great American, an excess carrier, filed a complaint for equitable subrogation against Defendant Auto-Owners insurance company ("Auto-Owners"), a primary carrier, to recover amounts paid by Great American to settle the action captioned, *Charlie Lewis and Dessie Larita Brown-Lewis v. Summit Greens Residents' Association, Inc., Leland Management, Inc., and Roberts Pool Service and Repair, Inc.*, Circuit Civil Case No. 2021-CA-000858 ("Lewis Action") on behalf of Summit Greens Residents' Association, Inc. ("Summit Greens") and Leland Management, Inc. ("Leland")—Auto-Owners' and Great American's common insureds. Not surprisingly, Great American states that it intends to offer the settlement agreement and settlement check from the Lewis Action as exhibits at trial. Great American now asks the Court to seal both documents.

In the motion to seal, Great American argues that the settlement agreement and the settlement check "include information that goes directly to Great American's confidential internal decision-making process, especially as it relates to monetary terms and amounts for settlement." (Doc. 96 at 6). And that the documents provide "insight into the proprietary business practices of Great American as to its claim and settlement practices." *Id.* Great American further argues "[m]ost importantly" that the terms of the settlement agreement, and by extension the amount of the settlement check, can—and likely will—be used against Great American, Summit Greens or Leland by interested third parties or other potential claimants. *Id.* And that the contents of the settlement agreement and settlement check may cause embarrassment to the parties of the Lewis Action. *Id.* Great American also asserts that a confidentiality agreement precludes the parties to the Lewis settlement agreement from discussing the terms with any third parties. *Id.* at 3. Finally, Great American contends that redaction, a pseudonym, or other means are unavailable or unsatisfactory because they would preclude the Court from assessing the pertinent terms and amount of damages. *Id.*

Motions to seal are governed by Local Rule 1.11, M.D. Fla. (2025). The party seeking the seal must ensure that the motion sufficiently addresses the procedural requirements of Local Rule 11(b). In addition, sealing "a docketed item, including a settlement agreement . . . requires a reason sufficiently compelling to overcome the presumption of public access." Local Rule 11(a).

While the Court has discretion to determine if it should permit filings under seal, that discretion is guided by the presumption that judicial proceedings and records should be available to the public. *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013) (per curiam). To overcome the presumption of public access to court filings, the proponent of

the request to file under seal must demonstrate good cause, which is determined "by the nature and character of the information in question." *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (citing *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309, 1315 (11th Cir. 2001)). The Court must balance "the public interest in accessing court documents against a party's interest in keeping the information confidential." *Id.*

Here, although the motion complies with the procedural requirements of Local Rule 1.11(b), Plaintiff has not established the existence of good cause or a sufficiently compelling reason to overcome the presumption of public access to the settlement agreement and settlement check. Plaintiff's claimed justifications that the documents include information regarding Great American's "confidential internal decision-making process, especially as it relates to monetary terms and amounts for settlement," and "insight into the proprietary business practices of Great American as to its claim and settlement practices" are vague, conclusory and unsupported by the Court's own review of the settlement agreement. *See e.g., Hillsborough Title, Inc. v. Samora Construction LLC*, No. 8:15-cv-1172-CEH-TGW, 2026 WL 1256119, at * 2 (M.D. Fla. May 7, 2026) (denying motion to seal settlement agreement where Plaintiff's stated justification that "sensitive financial terms and proprietary business provisions" that would result in "competitive and legal harm" are integrated throughout the agreement was vague, conclusory, and unsupported by the Court's own review of the agreement). Indeed, apart from the monetary amount of the settlement, the settlement agreement does not appear to reveal any information about Great American's internal decision-making process or claim and settlement practices. While the Court acknowledges that the privacy of confidential and proprietary business information can constitute good cause for keeping documents from the public view, Great American has failed to show that

the settlement agreement and settlement check contain such information entitled to protection.

Moreover, the entire focus of Great American's equitable subrogation claim is to recover the amount that it paid to settle the Lewis Action. Thus, the settlement agreement and settlement check are at the heart of this dispute, and if Great American is successful at trial, the amount of the judgment would reveal (or a minimum, provide significant insight) into the settlement amount.[1] This undercuts Great American's speculative argument that the settlement agreement and settlement check should be sealed because they could be used against Great American, Summit Greens or Leland by third parties or other potential claimants. Likewise, Great American fails to offer any explanation as to why the settlement agreement and settlement check—which provide no factual allegations beyond those contained in Great American's Complaint in this action—"may cause embarrassment to the parties of the Lewis Action*.*"

Finally, the fact that the parties determined that the settlement agreement would be confidential is not controlling. While settlement agreements are generally private, the filing of the agreement with the Court makes the document a judicial record. *See Kemar v. Avco Corp.,* No. 6:06-cv-448-Orl-22DAB, 2007 WL 2696571, at * 2 (M.D. Fla. Sept. 11, 2007) ("by filing the suit, the matter became this [c]ourt's business, and this [c]ourt conducts business [publicly]. Having chosen to pursue a claim in a public court, [the] [p]laintiff must take the burdens of such forum, as well as its benefits."). The fact that the settlement agreement

---

[1] In its prayer for relief, Great American requests the Court enter judgment against Defendant for equitable subrogation: (1) in an amount equal to Great American's expenditures to settle the Lewis Action, including interest, attorney's fees and costs, (2) in an amount to be determined at trial, or (3) in an amount this Court deems just and proper.

concerns settlement negotiations that were intended to be confidential is insufficient on its own to overcome the public presumption.

Without more, Great American has not established the existence of good cause or a sufficiently compelling reason to overcome the presumption of public access to the settlement agreement and settlement check. Therefore, the renewed motion to seal (Doc. 96) is due to be **denied, without prejudice**, to renewal upon a showing of sufficient grounds to find the settlement agreement entitled to protection. If Great American chooses to do so, it may file, within **fourteen days**, a renewed motion to seal the settlement agreement and settlement check. If Great American does not file a renewed motion within the time permitted, the Clerk is directed to **unseal** the documents at Doc. 96-1 and 96-2.

DONE and ORDERED in Ocala, Florida on November 6, 2026.

!

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Party